Good morning. Our first argued case today is 2017-1012 General Hospital v. Sienna. Mr. Bennett, please proceed. Good morning, your honors. May it please the court. GHC is appealing the PTAB's decision terminating GHC's interference on grounds of lack of written description. GHC maintains that the inventors possessed the claimed method of treatment to damage hair follicles. The evidence is that the claimed number of particles used in the inventive process fall within and border the particle concentration ranges the inventors disclose in their specification. Further, no evidence has been submitted that the claimed concentration is critical or that the claimed process works differently at any different concentrations. Counsel, even if we were to say that the term about should have been construed as plus or minus 20 percent, where's the written description of that particular claim in the specification for that degree of concentration? Yes, your honor. With regards to a particular formulation identified as F78, there is a preceding number associated with it, which is 250ODF78. When that 250ODF78 is examined, we realize, and our expert also identified this, that it is not in fact 250, but it can be up to 300. So that 50 was understood by a person skilled in the art, that difference to be the 20 percent difference. The issue, as far as we can see, is that the PTAB did not follow in Ray Wertheim and failed to consider the lack of criticality of the concentrations. It incorrectly held that the disclosed... I'm sorry, I didn't hear you. Lack of what? in the claims by not adopting the broadest reasonable interpretation, did not apply about not only to the specification in all its numerals, but did not properly apply about to all the concentration values, and did not take into account all the evidence of record, including that which detracts from the conclusion that the PTAB reached. And it also erred in the interference in not allowing it to proceed with an alternative claim. The invention... Can you... I realize this is moving to the back of your argument, but can you focus for a minute on the proposed amended Claim 74? I'm not entirely... and I guess I'd like to get your view about something that leaves me a little bit confused, exactly what it was that the Board said as a reason or as reasons for rejecting your amendment. One of the things that the Board clearly said was that you hadn't shown that your Claim 74 would not have... I guess would have been obvious, I'm sorry, in the light of Siena Claim Number 1. And you make an argument that that's wrong because our obviousness law involving ranges, roughly speaking, enables you to walk into court with a presumption that that's obvious. What else did the Board, as you read pages 22 to 23 of the appendix, give as a reason for rejecting your amendment? Was there anything else? Your Honor, the reasons that it was rejected seemed to be, in our view, quite wrong and incorrect and, in fact, arbitrary. Issues with regards to the representation regarding patentability, we certified that we knew of no art, we knew of no reason that it was not a patentable claim. The distinction that was created... Right, so the standing order says you must certify you don't know any reason, but it says at least two other things, doesn't it? One is you have to supply written description for your proposed amended claim. And then it also says something about showing why the earlier patentability problem is overcome. They're separate issues. Yes, and those are separate from the certification. I'm trying to get a grip on... I guess let me put it this way. I take, for purposes of this question, as an assumption that the Board was wrong in its conclusion that you did not show obviousness of your claim in light of Siena Claim 1. And therefore, the interference, in fact, reflects the count that the Board was wrong about that. Mike, what I'm trying to understand is, does that matter, or were there independent grounds for the Board rejecting your proposed amended claim? Independent of that? No, Your Honor. With regards to explanations that were provided as to patentability and certification and stipulations, we met all the guidelines. We proceeded to create charts. We showed the relationship of the claims. And all we had, in fact, done was create an ipsis verbis use of the 250OD that was explicitly shown within the specification, expressly disclosed in the specification, and replaced the 6.6 times 10 to the 11th concentration. So the standing order says that you have to show written description support for your proposed amended claim. We did. Ipsis verbis. But I thought that all you did was to address the changed element, not all the other elements in... They were identical, Your Honor. They were identical elements to the very first submission of Claim 65, pre-critical date. No one had argued any of the other limitations, changes, modifications. So few. So few. The one that was argued had to do with concentration, and it was a simple translation. A translation from a particles per milliliter value to an optical density concentration value. That value being ipsis verbis expressly stated within the specification. Okay. So one more little thing, and then I will leave the subject. I thought that there is... Isn't there some difference between 800 nanometers and 810 nanometers? Your proposed claim uses one, and the spec uses the other. Your Honor, in this field, there is no difference, given the size and the number of particles. The entire issue here is 6.6 or 7.7 in this sphere is inconsequentially different. There is no criticality. In fact, from the very beginning, we said there was no criticality. The count or the 941 patent goes from 10 to the 9th to 10 to the 23rd particles. No one has ever raised the argument or suggested that there was criticality on the process, criticality to the result. This is a method claim. It has nothing to do with or impacted by the concentration values, and indeed, it should not be our burden. That argument was never made. It was never made because it cannot be made. Then the board didn't make any determinations about written description in its refusal to amend, to allow you to make the amendment, right? I don't see the words written description really anywhere in their opinion as a basis for why they concluded you couldn't amend. Let me make sure I understand your argument. Are you saying that you had no obligation, no burden, to show that the 250 optical density limitation would have been obvious in view of the Sienna's concentration? Sienna's concentration ranges from 10 to the 9th particles per milliliter to 10 to the 23rd. Whether it's 6.6, as one expert says, times 10 to the 11th, or 7.7 times 10 to the 11th, the difference. You made the amendment. Then after that, did you present any type of evidence other than? Yes, we had declarations from our expert that were not considered. The fourth Michalski was considered, but in part, the third Michalski was not considered. You say not considered because the board did not make a? They had it, but they don't make any reference to the Michalski third, Your Honor. I would like to make sure that I preserve time. Okay, that's fine. Thank you, Mr. Bennett. Mr. Babcock. Good morning, Your Honors. May it please the Court. So let me engage in the same discussion you've just been having with my colleague, Judge Toronto. Your question about why the motion to amend was denied and whether independent bases, his answer was incorrect. There were three separate grounds, three separate reasons why the judge denied the motion to amend. Now, as you know, in board practice, when you're moving, you're the movement. You bear the burden to prove the relief you're seeking. The board has a lot of rules when you're moving to amend about things you must do. Three things you must do. You must show that the claim you're proposing interferes, in fact, with one of the claims in the other party's case. So you must show, at least make the allegation that this new claim, which has never been examined, interferes, in fact, with one of the other opponent's claims. GAC didn't do that. They didn't even make that allegation, let alone did they make the showing. Any evidence to say here's our new claim? Why don't they, why isn't it enough for them to rely on the law, call it the Peterson-related law, I don't know if I've quite got that right about their thing being in the range, that that gives them a presumption locking in and they don't need any more than the presumption. There's no presumption, Your Honor, when you're talking about one data point. They're saying 250OD is within the range of 10 to the 9th or 10 to the 23rd. And the particle size is roughly in the middle of the claimed CNA range. The Peterson line of cases is only when you're within a very small range and you claim something that's very similar. But here, one data point within a giant range, there's no presumption, obviously. And the board's rules are very clear. You must at least allege obviousness. You must have some evidence. I challenge them to show in their declarations. Where did Dr. Mikowski say that 250OD? I did ask counsel what evidence they had submitted, and you heard him say declaration. It doesn't exist, Your Honor. Ask for a paragraph site. Where did Dr. Mikowski, and the D is silent, so it's Mikowski. Where does he say that 250OD is obvious in view of this large range? There's no evidence in that regard. When you say obvious in light of this large range, you have a patent, the 941 patent, that articulates a range of nanoparticles from 10 to the 9th to 10 to the 23rd. The claim says any concentration of nanoparticles in this range is going to work for its intended purpose. No, it doesn't say that, Your Honor. Sure it does, because it was allowed. It's an issued patent. Patents have a presumption of validity, which includes operability, non-obviousness, no anticipation, utility. So there is a presumption that attaches to any valid issued patent, right? The entire claim, though, Your Honor, says the claims that have all of the following features that would be operable. So you have to figure out the person, and there's a lot of evidence in this record about which particular particles would, in fact, work. And the evidence is that, and I think there was a dispute that some particles that operated that range wouldn't work because of the other parameters in the claim. But the point is there is a large range that's recited in the Sienna claims. The burden was on the movement to at least make the allegation, make the facial allegation that their very narrow pinpoint within that range would have been obvious, therefore meeting the two-way obviousness test. The Board requires the movement make at least a prima facie showing of a two-way obviousness test being satisfied. Where is this evidence? So you're suggesting that there's evidence in this record that not everything in the range of 10 to the 9th to 10 to the 23rd of the concentration of nanoparticles would have worked? So where is that evidence? It was in declarations for motions that weren't decided. Other motions that were filed by the parties that were deemed... So with regard to this motion and the record the Patent Office had in front of it, there was no evidence of unpredictability or unworkability of the range? I'd have to go back and look and see. The declarations were... They may have been the same declarations that were filed. They're probably not part of the joint appendix because that issue wasn't on appeal, wasn't part of the appeal. But... I guess I don't understand because I haven't seen you allege or point to any evidence that suggests that anything between 10 to the 9th to 10 to the 23rd wouldn't work.  which includes a presumption of operability. I don't know why they need to do more than just point to a point within the range. I mean, granted, it's a large, large genus. It's a large range. But I don't know why they need to do more than that. Because the board's rules say that in order for you... And this is, again, the first prong. In order for you to add a new claim, you must at least make the allegation that there's an interference, in fact, between your proposed claim... And did they not do that? They did not do that. They didn't... I don't understand. By filing the motion to amend, their motion included no allegations? No evidence, Your Honor, that it would have been obvious. Those are two very different things. The board didn't say no allegations. The board said no evidence. That's right. And the point I was making earlier is that you need at least to have evidence from a person of skill in the art, from an expert, to say, I've looked at this evidence. I've looked at the broad range it's claimed. I've looked at this point, and this point, a person of skill in the art would have found this point to be obvious if it was the broad range. That's a simple statement to make. It doesn't exist in the record. And the board simply said you didn't meet your burden. Whether or not it's true or not isn't the question here. The question is, the review here is not, did the board... The review here is, was the board in any way arbitrary or capricious in denying the motion when the board has a very specific rule that says they need to put in evidence to show this obviousness, this interference in fact, and the movement didn't do that? Where's the specific rule that says they have to put in obviousness, evidence? The rule is the board's rule that says in order to move to amend, to succeed on a motion to amend, you must show there's an interference in fact. Right, but where you, there's... I'm looking at the standing order, which is the only sort of board rule that I know of that's in front of me today, and I don't see where it says what you just said it said. That you need to show that there's a... That there needs to be evidence produced. Where does it say that? Because I see a certification that has to be made, and I see that the motion has to explain why the proposed claim would overcome a problem, there would be an interference in fact. There we go. Where does it say the evidence? Well, Your Honor, when the rule says, including why there would still be an interference in fact, this is, you're reading the right part of the standing order. So why there would still be an interference in fact, that incorporates the notion of what is an interference in fact, and the law here is very clear. An interference in fact is a two-way obviousness test. You take one claim, presume it's prior art, would that render the other claim obvious, and then you have to do the vice versa, and it's an and. So what this is saying here, and interference practitioners know this, this isn't some kind of code, is that you must show there's a two-way obviousness test and that it's satisfied, and that you have to go through and say that if this claim is prior art, this claim that I'm proposing is obvious, and vice versa. You have to make that showing. And that's not just... There has to be evidence. There's no question that a simple allegation isn't going to be sufficient to meet your burden. You're the movement. You have to at least have some evidence to support your allegations. Counsel isn't persons of skill in the art, so they need to have evidence to show that a person of skill in the art would have found this point obvious, and that evidence doesn't exist. But that's only the first prong. The second prong that the board relies upon is whether or not they showed that there is a... whether they showed that this claim that they're proposing actually corresponded to the count. And so the count in this case is claim one. They have to show, again, that this claim corresponds to the count. There was no evidence presented that the claim corresponded to the count. So that's the second prong. Can you translate that into different words? I'm sorry, yes, I know. It's jargon. So interference, in fact, is the first task. It's one of the tasks we've been discussing. It's taking the claim you're proposing and looking at any claim of the opponent's and seeing if there's an interference. That's the first. That's one task. This is a separate task. Now you're proposing a brand-new claim. You need to show that it belongs to the interference. To show that it belongs to the interference, you have to look at the count, which has been declared, and that was our claim, our claim one, and you have to show that it belongs to the interference, meaning that it corresponds, that it would have been obvious in view of the count. So they need to go through the analysis to say this is a claim, these are the features of the claim, and this is why it would have been obvious in view of the count. And they didn't put in that evidence either. Can you turn to page 22 of the board opinion, please? Yes, ma'am. Because the only place where they address the argument that you're making now about how GHC failed to meet its burden to show proposed claim 74 would correspond to the count is at the bottom of page 22. And they don't give any reason except that they say, for the same reasons. Do you see it's the last sentence in that paragraph? For the same reasons, GHC has also failed to meet its burden of showing proposed claim 74 would correspond to the count. And so for the same reasons as the last sentence of the paragraph, I assume, and correct me if I'm wrong, that the reasons they're talking about are all the reasons articulated in this paragraph. Is that right? That's what I would read it as well, Your Honor. And so the problem is, what if I have a problem with the reasons they articulated in the paragraph? And I do. And my problem is, I'll just be very honest and clear with you, that Adafina is an anticipation case. It's not an obviousness case. And so for Adafina, what we were looking at was whether or not the disclosure of a species within a genus necessarily anticipates. This is obviousness. So that's a big difference. Also, in Adafina and in BARD, there was a teaching away from a portion of the range. We also don't have that in this record, any sort of teaching away. That's why I perked up and got interested when you suggested to me there was evidence that not everything in this range would work. But then you said, well, it wasn't part of the evidence in front of them for this motion. Because what the board cited to us is an anticipation case followed by a teaching away from a portion of the genus case. And so what that suggests to me is that that creates a cloud over whether everything in a particular genus would or would not work. I don't see a cloud here. And so I'm not sure why when we're talking about obviousness instead of anticipation and why there is nothing that leads away from any part of the genus being operable for a concentration of nanoparticles, I don't see why they have to prove anything else. They don't even need to have an expert opine that it would have been obvious. That simply as a matter of law, a point within a large genus is as a matter of law. When the other claim has already been allowed and there is a presumption of operability, I'm not sure why they do need to have an expert offer testimony at the point of deciding whether to allow them to add a claim to the interference. Unless I misunderstand interference law, this is not by any means the end of the interference. It's the beginning of the interference, right? This is the first part of the interference, Your Honor. So can't all of these things get flushed out in the form of evidence as the case moves forward through the interference? But not with regards to adding claims. Once the claim is in in the beginning of the interference, then it's in for the rest of the interference. Yes, but at that point, can't you still argue even though that claim is in for the interference? Can't you still make arguments about this claim? No, usually not, Your Honor. And the point here is that... No, usually not. I don't understand that answer. Well, the issues of patentability are dealt with in the first phase of the interference. In the second phase of the interference, now you deal with priority. So you go to priority of account. So whether or not now you can go back and revisit whether or not certain claims are patentable, the answer is usually no. Now, in interference practice, you can always ask the judge for authorization to file a motion to ask for some relief that you want to ask for. So I can't say definitively can you never go back and ask for relief on this issue. But generally the answer is no, that when you're in the first phase of interference, that's where you decide patentability issues. And if you want to bring in new claims, that's where you bring in new claims. But the board's rules are very clear. The movement bears the burden. This isn't a question of whether or not the movement could have possibly met its burden. The board here says I don't see any evidence in this record to support the allegation that this would have been obvious. Therefore, the movement fails to convince, to provide any evidence, and therefore fails to meet its burden. And just to be clear, you all did not put in evidence of your own that Claim 74 was unpatentable. You just relied on their failure to clear the... As a matter of fact, we did. That was the third prong of her decision. So we have no interference in fact. It was the first prong that she denied it on. Is this a single judge? Judge Katz. Well, Judge Katz wrote the opinion... For the board. For the board. Right. It's not her opinion. It's the board's opinion. Right. So the board based its decision on three prongs. No interference in fact wasn't shown. And that's the burden of the movement to show interference in fact. Going through the elements. Bamber v. Dalby was a case that this... Three elements, sorry. Two of them the board said for the same reason. Interference in fact doesn't correspond to the... Right. What else? What's the third? The third element is that you have to show that the claim is patentable. You have to show that the claim is patentable. And that includes... You must show a claim chart. You must have a claim chart that shows where you have support for everything in the claim. Where does the board say that in its opinion? I didn't see that anywhere in the board's opinion. The board's opinion says that they didn't show patentability. And the briefing to the... We've cited the opinion where it discusses the board's determination that... Right. There's a carryover sentence on 22 to 23. A single sentence furthermore which is about the certification. And then perhaps one can read something into the page 20 paragraph in which the board rejects GHC's argument that the earlier declaration of an interference resolves a bunch of questions, but the board doesn't say what those questions are. Well, that's understood, Your Honor, to mean that the fact that you have an interference declared doesn't mean that the claim is presumed patentable. Right. But even if one reads that plausibly enough given the citations as referring to written description, all that paragraph says is that our declaration of an interference doesn't resolve it. That paragraph does not say, and here's why you lack written description support as the standing order would require for your new Claim 74. And embedded in her discussion is the notion that they needed to show patentability. They did not show patentability. They needed to show that there was written description support for everything in the claim. That's a basic tenet of adding a claim. You have to have a claim chart. You have to have your proposed claim and a claim chart showing where everything is supported. They didn't do that. There's at least three limitations we discussed in our briefing that weren't even addressed in their briefing. So the board was correct in saying, look, you need to at least show that it's patentable. Show me that it's got written description support. And the answer is they didn't do that. There was also a serious question on 112 paragraph 1, written description. You're way over your time. We need to let Mr. Bennett use his rebuttal time now. Thank you, Your Honors. Your Honors. There has been a suggestion that there, or explicit statement, that we did not provide a chart. Well, APPX 579 associated with motion is a chart. Was that in your reply? Yes. Yes, so not in your opening motion. That's correct, Your Honor. And that was not a point that the board addressed in their decision. But clearly it's there. The board does say in its decision, it says on page 22, the same page we're looking at, it says that GHC, just to go down, says that does not direct us to evidence showing that one skill in the art would consider it obvious. And it goes on, given the wide ranges, it talks about the ranges and the optical density and the failure on your part to offer any type of evidence. And for that reason, you fail to meet your burden. And I asked you a while ago, what evidence did you offer? And you said declarations. Those declarations, were they related to your motion to amend it to support that? Or are you relying on declarations made with respect to the written description arguments? A declaration was submitted from Professor Machowski associated with the fourth motion, which is a motion related to 74. That is a Machowski declaration directed to claim 74. No, I'm asking, were those declarations submitted with your motion in support of the motion to amend? One of them was, and three others were not. Which one was submitted? It's called Machowski 4. I'm sorry? The fourth Machowski declaration. Where is it in the JA? Why don't you take us to it? We're getting that, it's actually, I apologize for the correction, it's Machowski 3rd. According to the record, is it? We're getting that. There is a point we'll address that, but I wanted to make sure that... 3631, maybe? That's the fourth. The fourth Machowski declaration. We're looking for 3249 to 3256. Do you want us to look at 3249? They're not in. Yeah, we don't have that. We don't have those. I know you all number a lot of things that don't eventually make it into the bound volumes. Yes, that is correct, that it does correspond to that. I wanted to point out... Let's just look at this from a legal point of view. Are you saying that you need to, you don't have to, mean to, any type of burden in a motion to amend, when you move to amend Claim 74, that you had no burden? Your Honor, we have a burden which we had repeatedly met, which is that the modification that was being made is that there was first a 250 OD modification and that limitation was expressly found within the specification, and that is, in fact, part of our burden, which we met. We also met the burden of, as the standing order indicates, to certify that the movement is not aware of any reason why the claim is not patentable, at page APPX 173. We met that burden. We have systematically addressed the proximity, the similarity between that which we have in 74 and 65. This entire proceeding, namely the interference, should continue. The substance of this is an argument over... Well, I think the question isn't whether you made any arguments or any type of, you had any type of evidence whether Claim 74 would induce the thermal damage to the hair follicles. Right. But the board says, and they say this in footnote 12 of 22, that you failed to address whether Sienna's claim would render obvious the proposed claim. We have a prima facie showing of obviousness, Your Honor. The history of this, whether it's the 941, when we started the interference, we repeatedly stated, and it has been never disputed, that there is no criticality, absolutely none associated with these concentrations. As such, when you have this range, and we then proceed to simply say that we have met our prima facie showing of obviousness, when you look at the count, you look at the claims from 10 to the 9th to 23rd, it really cannot be an important, critical, operative, determinative of this process of the concentration. This is a process to remove or address damaging a hair follicle. The variety of concentrations across the board, no one, no specification has expressly stated that there is any critical element associated with the concentrations. This is, in some respects, just an argument that was raised to dispute the conversion. Everyone recognized, in fact, there was no motion ever filed by Sienna of no interference in fact. From the very beginning, no one has disputed that there is an interference. The question really should be addressed is moving forward to the priority of the invention, to the invention. All right, Mr. Bennett, your time is up. Will you please file by the end of the day tomorrow, if possible, with the court? We have the motion, but give us a copy of the motion and all of the supporting evidence that may have been included with the motion. If it is your belief that that third declaration was included, I want exactly what was filed with the PTAB. I want the motion and anything that supported the motion as was filed with the PTAB. Don't go off reservation and give me something else. No, we'll be very specific, Karen. Thank you. Appreciate your time, your attention. Thank you very much, Karen. All right, I thank both counsel. The case is taken under submission.